Good morning. May it please the court. Chris Dehart on behalf of Osvaldo Sarabia, Sarabia appellant. I would like to reserve three minutes for rebuttal, please. In this case, there is insufficient facts to support a finding of probable cause to either arrest Mr. Sarabia or to search the vehicle, the BMW, in the parking lot at Denny's on that day. The information provided by the government is uncorroborated. It is CI information, which requires the highest amount of support before a court can depend on it to find probable cause. This, he does not, the CI did not have a history of providing accurate information. Thus, the only thing to go on would be the information he provided on that day. The information he provided was not, there was no criminal conduct that was corroborated. He indicated he had a history of dealing with Mr. Sarabia. However, that was not corroborated by anything. That's just his statement. He indicated that he was an acquaintance of Mr. Sarabia. Thus, the fact that he could describe Mr. Sarabia or that he could describe a vehicle Mr. Sarabia drives does not support a finding of criminal inference that criminal conduct is occurring. And the fact that he knew where Mr. Sarabia sometimes went, the house on Trelator, again, most people know those things about acquaintances. That does not support a finding of probable cause to stop Mr. Sarabia and to search his vehicle. And the telephone calls, while there is information within the telephone calls, it's not clear where that information comes from. I think what's critical in a finding of probable cause to arrest Mr. Sarabia would be what do the terms it, something, and the usual mean. And there's no evidence to indicate that the CI provided any information to support what those definitions mean. Well, as to that specific aspect, why isn't a law enforcement officer entitled to apply experience and common sense to the understanding of a conversation? I mean, I'm thinking back to another case, not this one, in which there were repeated orders for washing machines. And a washing machine was apparently code for some specified amount of a drug that, you know, periodically they were ordering. I'll take four washing machines. And, you know, why can't there be some application of common sense on the part of the hearer? I believe that there can be in certain situations. And the situation Your Honor describes is an ongoing pattern of calling up and ordering four washing machines. And it happens quite frequently in wiretap cases where you'll be, the officers will be listening to phone calls. And as you said, they'll order four washing machines once a week. That's a reasonable inference to draw that a person isn't going to be ordering four washing machines per week. However, when you have a situation like this one where it's isolated, we're talking about a few hours on one day. There's not a long history of conversations. We have one conversation wherein the CI refers to it, something, and the usual. So there's no context within which to make that inference. So while I would agree with your premise, there's not sufficient facts in this case to make that inference. Sotomayor I have a question about the other issue in the case about evidentiary hearing. And what specific facts in your view would be explored at an evidentiary hearing that would matter to the outcome? Just those facts I expressed would be within the affidavit that was used to support the finding of probable cause here, there's no clear indication who said it, something, and the usual. There's no indication that the CI, quote, unquote, explained to the officer what this information was. Well, then it seems to me what you're saying is that the affidavit is not legally sufficient. That's correct. I don't see where there's a factual dispute. I mean, it's either sufficient or it's not sufficient. It's not like you have an alternate meaning for these words. The police officer put it in the affidavit that meant methamphetamine or the purchase price. You don't have anything to say, well, it really meant coffee beans or something else. That's correct. So this is not – I don't see what an evidentiary hearing would prove. Your contention is that what's ever in the affidavit isn't adequate. That's correct. Well, is that your position, that the only issue to be explored at the evidentiary hearing was the source of the parenthetical words in the affidavit, as opposed to information about what arrangement had been made between law enforcement and the CI? The arrangement between law enforcement and the CI was also an issue to be determined, which the trial counsel raised as a potential area to explore. What benefits? What specifically about that would have been explored at an evidentiary hearing? What type of benefits, what type of promises he was made if there was pressure put upon the CI that he or she would need to produce sufficient information before they're to receive a benefit? Well, am I correct that the record does not reveal what arrangement was made between the CI and law enforcement? That is, whether he was, for example, given immunity in connection with whatever he might reveal to law enforcement about previous drug dealings? That's correct. There's no information about what type of benefit he or she received. If there's no other questions, I'll reserve my remaining three and a half minutes for rebuttal. Thank you. Good morning. Good morning, Your Honors. My name is Jason Hitt. I'm an assistant United States attorney for the Eastern District of California. And I'll briefly respond to some of the issues raised by Ms. Hart. Leaving or starting where Ms. Hart left off, I would disagree that the record does not contain information about the benefits provided to the CI. And I would direct the Court's attention to excerpts of record, page 54, carrying on into 55. And essentially what is laid out in the affidavit, which was before the district court, was that the CI had been arrested in possession of multiple pounds of crystal methamphetamine. And the CI provided the following information, and I'll quote here, for consideration in the CI's pending charges. And what is clear in the context of the entire affidavit is that the CI essentially had gotten caught red-handed and decided to try and help himself.     I don't think there is any evidence in the record as to what agreement was made between law enforcement and the CI about any acknowledgement he might make of other criminal activity. Is there anything in the record about whether there was such an agreement or not? I don't think so, Your Honor. In the record, there is about other criminal activities other than what the CI had done with Mr. Sorano. Well, let me make clear why I'm asking this question. If the government had promised him immunity, for example, in connection with any acknowledgement of prior criminal conduct, would any statements that he made to law enforcement in this context be against his penal interest if he had immunity? If he had immunity, no. And I think what's clear from this record, though, is that these agents did not have the authority or the ability to make such promises. They essentially had arrested the CI, and the CI on his own said, I would like to help myself. And the six pounds that you caught me with were provided two weeks earlier by Mr. Sarabia, and they proceed to basically conduct the operation. And I think what's clear from the record is that the district court did not find any clearly erroneous facts. And in searching Ms. Hart's brief, I don't see any findings that are isolated or identified by the district court to be characterized as clearly erroneous. And I think that the overlapping layers of the independent corroboration, which the whole point of testing the CI and corroboration is to see whether what the CI is saying is true. And as the night unfolded over the various monitored calls that were drug-related, the corresponding acts that corroborated the information, the truth and veracity at least of where he lived, what cars he drove, what they were talking about, I think it was clear that there was a fair probability that in the context of leaving in the middle of the night to go to a Denny's parking lot after engaging in four drug-related phone calls, carrying a red bag, and to collect a $30,000 drug debt clearly supported the finding of probable cause. And I would ask this Court to affirm the district court's finding. And I don't know that there are any clearly erroneous facts that were found. I would submit, unless the Court has further questions for me. Roberts. Ms. Hart, you get the last word. Hart. Well, the district court found that what was contained within the affidavit was sufficient to support a finding of probable cause. And that's the erroneous finding that we are challenging. There is not sufficient evidence within the affidavit to support a finding of probable cause that either Mr. Sarabia to support an arrest warrant for Mr. Sarabia or to search the car generally that Mr. Sarabia was driving or to search the red bag that was found within the car. And on that, I'll submit. Thank you, Ms. Hart. Mr. Hitt, thank you. The case just argued is submitted. Good morning.
judges: Silverman, Graber, Cjj Lynn (N. Texas), Dj